IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAUNA O.,[1]

              Plaintiff,

           v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[2]

              Defendant.

Case No. 3:20-cv-01149-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Shauna O. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S.

Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] The Court substitutes Kilolo Kijakazi, who became the acting Commissioner of the Social Security Administration on or about July 9, 2021, for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in October 1967, making her forty-seven years old on October 18, 2014, her amended disability onset date.[3] (Tr. 13, 55, 98.) Plaintiff has a ninth-grade education

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL

and past work experience as a bus driver. (Tr. 27, 56-57.) In her application, Plaintiff alleged

disability due to human immunodeficiency virus ("HIV"), bipolar disorder, and fibromyalgia.

(Tr. 98, 113.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and

on April 12, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative

hearing held on May 1, 2019. (Tr. 52-80.) On June 25, 2019, the ALJ issued a written decision

denying Plaintiff's application. (Tr. 13-29.) On May 12, 2020, the Appeals Council denied

Plaintiff's request for review, making the ALJ's written decision the final decision of the

Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-

2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

---

4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of March 31, 2018 (*see* Tr. 14) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before March 31, 2018, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*,

262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id*. at 954. The Commissioner bears the burden of proof at

step five of the analysis, where the Commissioner must show the claimant can perform other

work that exists in significant numbers in the national economy, "taking into consideration the

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d

at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262

F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 13-29.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since October 18, 2014, her amended alleged onset date. (Tr. 16.) At

step two, the ALJ determined that Plaintiff suffered from the following severe, medically

determinable impairments: "[F]ibromyalgia, trochanteric bursitis, and major depressive

disorder[.]" (Tr. 16.) At step three, the ALJ concluded that Plaintiff did not have an impairment

that meets or medically equals a listed impairment. (Tr. 17.) The ALJ then concluded that

Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these

limitations: (1) Plaintiff cannot climb ladders, ropes, or scaffolds; (2) Plaintiff can engage in no

more than frequent stooping, crouching, and crawling; (3) Plaintiff is limited to "simple, routine and repetitive work"; and (4) Plaintiff must avoid concentrated exposure to hazards. (Tr. 19.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a bus driver. (Tr. 27.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a small products assembler, laundry folder, and price marker. (Tr. 28.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) clear and convincing reasons for discounting Plaintiff's symptom testimony; (2) specific and legitimate reasons for discounting the opinions of Plaintiff's treating physician, Kenneth Nguyen, D.O. ("Dr. Nguyen"), and treating psychologist, Renata Ackermann, Ph.D. ("Dr. Ackermann"); and (3) germane reasons for discounting the opinions of Plaintiff's nurse practitioners, Maria Kosmetatos ("Kosmetatos") and Sally Rothacker-Peyton ("Rothacker-Peyton"), and physical therapist, Lawrence Andes ("Andes"). (Pl.'s Opening Br. at 2-3.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### 1. Situational Stressors

The ALJ discounted Plaintiff's symptom testimony because the record reflected that she "experienced symptomatic exacerbations corresponding to situational stressors, including

difficulties in her marriage," which, in the ALJ's view, "suggest[ed] that the intensity of [Plaintiff's] mental symptoms are more situational than intrinsic." (Tr. 21.) This is a clear and convincing reason for discounting a claimant's testimony. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (holding that "the record support[ed] the ALJ's conclusion that [the claimant's] mental health symptoms were situational"); *Lorilyn W. v. Comm'r Soc. Sec. Admin.*, No. 6:19-cv-00925-YY, 2020 WL 7028475, at *7 (D. Or. Nov. 30, 2020) (stating that "the ALJ did not err in discounting [the claimant's] credibility concerning her subjective complaints on the basis they were caused by situational stressors," and noting that "the ALJ observed [that the claimant's] mental health was affected by a number of situational stressors, such as her difficult marriage"); *Kelly B. v. Saul*, No. 3:18-cv-01450-SB, 2019 WL 5680393, at *6 (D. Or. Nov. 1, 2019) (finding that "[i]t was reasonable for the ALJ to find that [the claimant's] symptoms were situational"); *Angela Y. v. Comm'r Soc. Sec. Admin.*, No. 3:17-cv-01954-HZ, 2019 WL 281291, at *6 (D. Or. Jan. 21, 2019) (concluding that "it was reasonable for the ALJ to find that [the claimant's] symptoms were situational"); *Menchaca v. Comm'r, Soc. Sec. Admin.*, No. 6:15-cv-01470-HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016) ("The ALJ's . . . conclu[sion] that [the claimant's] symptoms were sometimes caused by situational stressors is a reasonable interpretation of the record, and thus . . . it [is] a legitimate reason to discount [the claimant's] credibility.").

Plaintiff does not specifically argue that the ALJ erred in finding that Plaintiff's mental health symptoms were exacerbated by situational stressors, such as marriage difficulties. (*See* Pl.'s Reply Br. at 1-5 and Pl.'s Opening Br. at 6-13, addressing only the ALJ's reliance on "unremarkable mental status examinations and improvement in mental health with medication" and acknowledging that on December 21, 2015, Kosmetatos concluded that some of Plaintiff's

depression was "situational"). In any event, the Court concludes that the ALJ's interpretation of the record was reasonable and, therefore, the Court will not second-guess the ALJ's finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

Substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance) supports the ALJ's finding that Plaintiff's mental health symptoms were situational. (*See, e.g.*, Tr. 631, March 6, 2014, Plaintiff reported that her mental health medication had "generally been helping," her "[l]ife/[new] marriage [was] going well," and she was "[n]o longer in counseling"; Tr. 786, May 20, 2015, Dr. Ackermann stated that Plaintiff was "currently experiencing a lot of distress in her new marriage" and Plaintiff's "[s]ymptoms began to intensify about a year ago"; Tr. 777, August 27, 2015, Dr. Ackermann noted that Plaintiff "addressed some of the tension and unhappiness in her marriage" and reported that she was "doing much better" because her husband was "making efforts to clean out the house and make space for her" and he was "no longer attempt[ing] to grope her in public which was a big trigger for her"; Tr. 774, December 21, 2015, Kosmetatos noted that Plaintiff was "still depressed, some situational"; Tr. 737, November 3, 2016, Dr. Ackermann stated that "[o]verall [Plaintiff was] doing pretty well now that [her] marriage [was] going better," referred to Plaintiff's depression as "mild," and noted that Plaintiff reported that her "overall biopsychosocial wellbeing has improved since last session, especially her marriage" and she "find[s] it harder . . . to cope with her symptoms during the[] darker and colder months"; Tr. 1308, May 31, 2017, Kosmetatos and Plaintiff "discuss[ed] a plan for the fall to prevent exacerbation of depressive symptoms related to the season"; Tr. 1318, September 18, 2017, Dr. Ackermann noted that Plaintiff "[o]verall

[was] doing ok, other than feeling lonely and not much to do other than sit around the house"
while she recovered from an injury, and Plaintiff reported that her "marriage relationship [was]
going better" and she was "learning to express herself [to her husband] rather than bottle it all
up"; Tr. 1377, July 11, 2018, Dr. Ackermann observed that Plaintiff was "[s]omewhat frustrated
and agitated" and reported "on-going distress in her marriage," which was a "[c]hronic situation"
that she "doesn't really know what to do about" because she "finds that her husband only cares
about himself").

Given this evidence, the ALJ did not err in discounting Plaintiff's symptom testimony on
the ground that her mental health symptoms were situational.

### 2.    Plaintiff's Reported Activities

The ALJ also discounted Plaintiff's symptom testimony based on her reported activities.
For example, the ALJ noted that despite complaints of depressive symptoms, the record reflects
that Plaintiff was "traveling, entertaining guests, and singing with her husband's band." (Tr. 21;
*see also* Tr. 19, 22, the ALJ noted that Plaintiff "reported being unable to work because she
panics when she is around people," and the ALJ later observed that Plaintiff reported that she
"had a Halloween party and had about thirty people over" and "hosted a Thanksgiving dinner";
Tr. 60, "Too stressful to look for work? A. To go to work. It just panics me to be around
people.").

It is well settled that an ALJ may discount a claimant's testimony based on activities that
are incompatible with the claimant's testimony regarding the severity of her symptoms. *See
Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's
testimony and the claimant's reported activities provide a valid reason for an adverse credibility
determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have
"bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the

claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). "Even where [the] activities suggest some difficulty functioning, they may be grounds for discrediting [the claimant's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir. 2020) (citation omitted).

During the administrative hearing, Plaintiff testified that she cannot work because it "panics [her] to be around people." (Tr. 60; *see also* Tr. 329, November 30, 2016, Plaintiff reported that she used to "bowl[] in leagues" but she is "[n]ot able to tolerate [being around] that many personal contacts now"). Substantial evidence supports the ALJ's finding that Plaintiff's reported social activities, such as entertaining dinner and party guests, are inconsistent with Plaintiff's testimony regarding the severity of her mental health symptoms. (*See* Tr. 737, November 3, 2016, Plaintiff reported that she had "been doing better" and "had about 30 people over" for "a Halloween party"; Tr. 932-33, November 16 and November 23, 2016, Plaintiff reported that she was "hosting Thanksgiving dinner" and planned to attend church with her dad; Tr. 932, December 21, 2016, Plaintiff reported that "she had several drinks at her husband's Christmas party"; Tr. 927, January 5, 2017, Plaintiff reported that she "cooked a roast for several people" and "they all enjoyed each other's company").

Plaintiff "concedes that hosting people for dinner is inconsistent with social limitations, but argues that hosting large dinner parties "should not be viewed as clear and convincing evidence to reject [her] allegations of emotional lability and concentration difficulties." (Pl.'s Opening Br. at 11.) The Court disagrees. Hosting several large parties, preparing dinner for large groups, and attending other social gatherings within a relatively short time period is also

inconsistent with Plaintiff's testimony regarding her mood instability and difficulties with concentration.

The Court concludes that the ALJ did not err in discounting Plaintiff's testimony based, in part, on her reported activities.

### 3. Conclusion

The ALJ provided at least one clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's symptom testimony, and therefore the ALJ did not err. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible"); *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted).

## II. MEDICAL OPINION EVIDENCE

### A. Applicable Law[4]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing

---

[4] The new regulations that govern how ALJs must evaluate medical opinion evidence do not apply here because Plaintiff filed her application before March 27, 2017. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

'specific and legitimate reasons that are supported by substantial evidence [in the record].'"
*Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinions of her treating physician, Dr. Nguyen, and treating psychologist, Dr. Ackermann.

#### 1.    Dr. Nguyen

##### a.    Dr. Nguyen's Opinion

On August 14, 2018, Dr. Nguyen drafted a letter addressed "To Whom it May Concern," stating that Plaintiff suffers from "chronic pain due to her fibromyalgia and her numerous musculoskeletal injuries including rotator cuff tendonitis, cervical and thoracic spondylosis, myofascial pain, and wrist sprains." (Tr. 1200.) Dr. Nguyen's letter also explained that in his

opinion, Plaintiff is not "able to have any meaningful or gainful employment at this time or in the near future" given Plaintiff's "chronic pain, combined with her other health problems[.]" (*Id.*)

### b.    The ALJ's Decision

The ALJ assigned "little weight" to Dr. Nguyen's August 14, 2018 letter. (Tr. 25.) The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for doing so.

As an initial matter, the ALJ discounted Dr. Nguyen's opinion letter because it was "written after [Plaintiff's] date last insured [of March 31, 2018] and thus does not reflect [Plaintiff's] functionality during the relevant period." (*Id.*) Plaintiff argues that this was not a valid reason for discounting Dr. Nguyen's opinion, citing *Fittje v. Colvin*, No. 6:13-cv-00629-HA, 2014 WL 4388293, at *5 (D. Or. Sept. 4, 2014), and *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

In *Smith*, the Ninth Circuit stated that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." 849 F.2d at 1225. Relying in part on this quote from *Smith*, the district court in *Fittje* agreed with the claimant that the ALJ erred in discounting an examining psychologist's opinion on the ground that the psychologist did not evaluate the claimant until "nearly eighteen months after the date last insured" of March 31, 2010. 2014 WL 4388293, at *5 (quoting *Smith*, 849 F.2d at 1225). Notably, however, the psychologist's opinion stated that the opined "limitations have been present since March 2007." *Id.* at *4.

Unlike the examining psychologist's opinion in *Fittje*, the record here does not reflect that Dr. Nguyen concluded that the limitations he identified were present before Plaintiff's date last insured of March 31, 2018. On the contrary, Dr. Nguyen's opinion letter states that Plaintiff cannot sustain gainful employment "at this time [i.e., August 2018] or in the near future"

(Tr. 1200), and there is no indication that Dr. Nguyen treated Plaintiff prior to her date last insured. (*See* Tr. 1250, noting that Kosmetatos referred Plaintiff to Dr. Nguyen on June 29, 2018). Thus, the ALJ did not err in discounting Dr. Nguyen's opinion on the ground that it did not address Plaintiff's ability to work during the relevant time period. *See Anderson v. Saul*, 818 F. App'x 709, 711 (9th Cir. 2020) ("Dr. Roes did not treat Anderson prior to her DLI, which means his opinions are entitled to less weight than those of a contemporaneously treating provider. . . . The ALJ also observed that two of Dr. Roes's opinions described Anderson's limitations as of 2008 and 2010, rather than during the adjudicative period, which ended in 2003.").

In her reply, Plaintiff notes that although Dr. Nguyen's opinion postdates her date last insured of March 31, 2018, Dr. Nguyen's opinion was based in part on "pain from rotator cuff tendonitis, which is supported by the MRI of the right shoulder dated November 16, 2017." (Pl.'s Reply Br. at 7.) Although Dr. Nguyen's opinion was based in part on an impairment that predated Plaintiff's date last insured, that does not change the fact that Dr. Nguyen's opinion only addressed Plaintiff's ability to work "at this time [i.e., August 2018] or in the near future." (Tr. 1200.)

Furthermore, although Plaintiff's shoulder impairment predated her date last insured, the ALJ properly discounted Plaintiff's symptom testimony on the ground that she stopped attending physical therapy for her shoulder after only a few visits. (*See* Tr. 3071-78, October 12, 2018, Plaintiff underwent an initial physical therapy assessment post-"arthroscopy and calcific debridement of [her right] shoulder on 10/3/2018"; Tr. 3089-90, November 15, 2018, Plaintiff's physical therapist noted that Plaintiff "made good progress in therapy," exhibited "markedly improved" range of motion and "significantly increased tolerance to functional activities," and

understood that "soreness and clicking are expected"; Tr. 3094, December 18, 2018, Plaintiff's

physical therapist noted that Plaintiff was "[d]oing better but still can be sore" and exhibited

"good potential to achieve established goals to address the documented impairments by

participating in skilled physical therapy services"; Tr. 3027, January 18, 2018, "This patient has

not returned to PT in more than one month and will be discharged at this time, status

unknown."). The ALJ cited Plaintiff's decision to stop attending physical therapy for her

shoulder in further support of discounting Dr. Nguyen's opinion. (*See* Tr. 20-21, 25, the ALJ

cited Tr. 3027, i.e., "Ex. C35F/130," and noted that Plaintiff "self-discontinued physical

therapy," which suggested that her shoulder was "not as debilitating as alleged").

      Plaintiff suggests that the ALJ erred in relying on her decision to stop attending physical

therapy for her shoulder, because the physical therapy caused "clicking with combined [internal

rotation] and elevation motions." (*See* Pl.'s Opening Br. at 10, 14, arguing that substantial

evidence does not support the ALJ's finding that physical therapy "alleviated" Plaintiff's arm

symptoms, and maintaining that the ALJ erred in discounting Dr. Nguyen's opinion based on

Plaintiff "self-discontinuing physical therapy"). The record, however, reflects that Plaintiff's

physical therapist explained to Plaintiff that "soreness and clicking [were] expected" during the

rehabilitation process, and believed that Plaintiff was making good progress and improving with

physical therapy. (Tr. 3089.) Accordingly, the alleged side effect does not support Plaintiff's

decision to end physical therapy, and the ALJ did not err by relying in part on Plaintiff's decision

to stop attending physical therapy to discount her symptom testimony and Dr. Nguyen's opinion.

*Cf. Candelaria v. Colvin*, 622 F. App'x 678, 678-79 (9th Cir. 2015) (holding that the ALJ

satisfied the clear and convincing reasons standard and noting that the ALJ discounted the

claimant's testimony because "she attended only half of her scheduled physical-therapy

appointments"); *Angelina G. v. Saul*, No. 5:18-cv-01894-GJS, 2020 WL 606759, at *4 (C.D. Cal. Feb. 7, 2020) (holding that the ALJ did not err in discounting the claimant's testimony on the ground that the claimant stopped attending physical therapy "prior to the conclusion of her treatment").

### 2.    Dr. Ackermann

#### a.    Dr. Ackermann's Opinion

On August 22, 2018, Dr. Ackermann drafted a letter "To Whom It May Concern," cosigned by a nurse practitioner, Rothacker-Peyton, addressing Plaintiff's ability to work. (Tr. 1201-02.) In the letter, Dr. Ackermann explained that she has provided Plaintiff with "behavioral health treatment on a bi-monthly basis since May 2015"; she had a "prior relationship" with Plaintiff at a different clinic; and Plaintiff has "a life-long history of depressive symptoms, mood fluctuations and trauma related physical and emotional responses that have interfered with a healthy emotional and social development and overall functioning in this world." (Tr. 1201.) Dr. Ackermann also observed that Plaintiff's "[m]arginal employment, unstable living situations, poverty and relationships with partners who were physically, sexually and emotionally abusive have further impacted and undermined her coping ability"; Plaintiff "worked different low wage earning jobs over the years . . . , but would usually fail due to either emotional, physical or social challenges"; Plaintiff "has been treated with a variety of psychiatric medications with [some adverse] side effects and poor response to both anti-psychotic medications and mood stabilizers"; Plaintiff "has not been able to develop the inner support and necessary coping strategies to consistently and reliably attend to and perform job duties"; and in Dr. Ackermann's and Rothacker-Peyton's opinions, Plaintiff is "not likely to be able to be gainfully employed and follow through with work expectations" given her "mental health issues, including depressive mood, mood instability, [and] attention and concentration problems." (Tr. 1201-02.)

PAGE 16 – OPINION AND ORDER

Dr. Ackermann also completed a questionnaire on November 14, 2018, regarding Plaintiff's work-related abilities. (Tr. 1404-09.) In the questionnaire, Dr. Ackermann stated that Plaintiff's diagnoses include bipolar disorder and posttraumatic stress disorder, and Plaintiff's symptoms include irritability, impaired sleep and concentration, mood fluctuations, and feeling depressed. (Tr. 1404.) Dr. Ackermann also stated that Plaintiff would "experience substantial difficulty with stamina, pain or fatigue" if she worked full-time; Plaintiff would "need to work at a reduced work pace" if she worked full-time; and Plaintiff's ability to maintain a normal work pace is "[v]ery [p]oor." (*Id.*) Additionally, Dr. Ackermann noted that she rated Plaintiff's "experience with stamina and/or fatigue" as an eight out of ten based on Plaintiff's self-report; Plaintiff's symptoms would frequently interfere with her ability to maintain attention and concentration; and she could not address Plaintiff's physical ability to perform work-related activities "due to only seeing [Plaintiff] in [a] counseling setting." (Tr. 1404-08.)

### b.    The ALJ's Decision

The ALJ assigned "little weight" to Dr. Ackermann's opinion evidence. (Tr. 24-25.) The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for doing so.

First, the ALJ discounted Dr. Ackermann's opinion because the ALJ "surmised" that Dr. Ackermann's "opinions regarding [Plaintiff's] pain are based solely on [Plaintiff's] subjective complaints without actual examination of physical conditions." (Tr. 24.) This is a specific and legitimate reason for discounting a physician's opinion, *see Padilla v. Saul*, --- F. App'x --- , 2021 WL 1564340, at *1 (9th Cir. Apr. 21, 2021) (holding that the ALJ met the specific and legitimate reasons standard and noting that the ALJ "partially discounted" a physician's "opinion because it relied on [the claimant's] properly discredited subjective complaints"), and it is supported by substantial evidence. (*See* Tr. 1404, Dr. Ackermann, a

PAGE 17 – OPINION AND ORDER

mental health provider who never diagnosed or assessed any physical impairments, opined that Plaintiff "would experience substantial difficulty with stamina, pain, or fatigue" if she worked full-time and acknowledged that she relied on Plaintiff's self-report in rating "stamina and/or fatigue").

Second, the ALJ discounted Dr. Ackermann's opinion on the ground that it was inconsistent with, among other things, Plaintiff's ability to entertain guests and sing in her husband's band. (Tr. 24.) It is well settled that "conflicts between a physician's opinion and a claimant's activities are specific and legitimate reasons" for discounting the opinion. *Concannon v. Saul*, --- F. App'x --- , 2021 WL 2941767, at *2 (9th Cir. July 13, 2021) (citing *Ghanim*, 763 F.3d at 1162-63).

Plaintiff suggests that her ability to host people at her house is not inconsistent with Dr. Ackermann's opinion regarding Plaintiff's "difficulty concentrating and mood instability." (*See* Pl.'s Opening Br. at 14-15.) Plaintiff, however, fails to recognize that Dr. Ackermann opined that "social limitations" would negatively "affect [Plaintiff's] ability to work at a regular job on a sustained basis," and Plaintiff "concedes that hosting people for dinner is inconsistent with social limitations[.]" (Pl.'s Opening Br. at 11.) Accordingly, the ALJ did not err in discounting Dr. Ackermann's opinion on this ground. (*See* Tr. 744-46, September 19 and September 28, 2016, Plaintiff reported that she was "singing with her husband in his band"; Tr. 737, November 3, 2016, Plaintiff reported that she had "been doing better" and "had about 30 people over" for "a Halloween party"; Tr. 932-33, November 16 and November 23, 2016, Plaintiff reported that she was "hosting Thanksgiving dinner" and planned to attend church with her dad; Tr. 932, December 21, 2016, Plaintiff reported that "she had several drinks at her

husband's Christmas party"; Tr. 927, January 5, 2017, Plaintiff reported that she "cooked a roast for several people" and "they all enjoyed each other's company").

### 3. Conclusion

For these reasons, the Court concludes that the ALJ did not commit harmful error in discounting Dr. Nguyen's or Dr. Ackermann's opinions. *See Gilliland*, 821 F. App'x at 799 (noting that errors are harmless if the ALJ "provided at least one valid reason" for discounting the evidence) (citation omitted); *Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.").

## III.    OTHER MEDICAL SOURCES

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the opinions of her nurse practitioners, Rothacker-Peyton and Kosmetatos, and physical therapist, Andes.

### A.    Rothacker-Peyton

Rothacker-Peyton is a nurse practitioner who cosigned, and contributed to, Dr. Ackermann's August 22, 2018 letter, which is discussed above. (Tr. 1201-02.) Rothacker-Peyton also completed a questionnaire on December 5, 2018, addressing the same questions that Dr. Ackermann addressed in the November 14, 2018 questionnaire. (*Compare* Tr. 1404-09, *with* Tr. 2395-2400.)

Under Ninth Circuit case law, "nurse practitioners are not 'non-acceptable' sources but rather are classified as 'other' medical sources whose testimony ALJs cannot discount without providing germane reasons for doing so." *Deluca v. Berryhill*, 721 F. App'x 608, 611 (9th Cir. 2017) (citation omitted). The Court concludes that the ALJ did not commit harmful error in discounting Rothacker-Peyton's opinion because she does not describe any limitations beyond those described by evidence that the ALJ reasonably discounted (i.e., Plaintiff's testimony and Drs. Ackermann's and Nguyen's opinions). *See Cornellier v. Saul*, 834 F. App'x 321, 325 (9th Cir. 2020) (noting that the ALJ disregarded lay and other medical source testimony "without comment," but holding that any error was "harmless because the testimony did not describe any limitations beyond those described by [the claimant] and other evidence discounted by the ALJ").

## B.      Kosmetatos

On November 5, 2018, Kosmetatos completed a questionnaire that was very similar, but not identical, to the questionnaires that Dr. Ackermann and Rothacker-Peyton completed. (Tr. 1399-1403.) In the questionnaire, Kosmetatos stated that she has treated Plaintiff since 2002; Plaintiff suffers from depression, bipolar disorder, fibromyalgia, bursitis, and a cervical disc disorder; Plaintiff's symptoms include fatigue, poor concentration, excessive sleep, agitation, sadness, decreased motivation, and panic attacks; and Plaintiff's clinical findings and objective signs include isolating in her home, panic, increased heart rate and blood pressure, back spasms, and vomiting. (Tr. 1399.) Like Dr. Ackermann, Kosmetatos opined that Plaintiff "would experience substantial difficulty with stamina, pain or fatigue" if she worked full-time; "would need to work at a reduced work pace" if she worked full-time; and Plaintiff's ability to "maintain a normal work pace" is "[v]ery [p]oor." (*Id.*) Kosmetatos added that Plaintiff has significant problems with stamina and/or fatigue; Plaintiff's symptoms would "[v]ery [f]requently" interfere

with her attention and concentration; Plaintiff cannot perform even "low stress" jobs; Plaintiff cannot lift or carry ten pounds or more; and Plaintiff can rarely stoop, crouch, and climb stairs. (Tr. 1400-03.)

Consistent with its findings above, the Court concludes that the ALJ provided several germane reasons for discounting Kosmetatos's opinion. First, the ALJ discounted Kosmetatos's opinion on the ground that it was inconsistent with Plaintiff's reported activities, such as "hosting people over at her house." (Tr. 24.) As discussed, Plaintiff "concedes that hosting people for dinner is inconsistent with social limitations" (Pl.'s Opening Br. at 11), and similar to other providers, Kosmetatos relied on Plaintiff's limitations related to social withdrawal/isolation and panic attacks. Thus, the ALJ did not err in discounting Kosmetatos's opinion based on Plaintiff's activities.

Second, the ALJ discounted Kosmetatos's opinion on the ground that it was inconsistent with Plaintiff "having self-discontinued physical therapy." (Tr. 24.) It was reasonable for the ALJ to discount Kosmetatos's opinion on this ground because (1) as the ALJ noted in her decision, Kosmetatos identified reaching limitations and concluded that Plaintiff could lift and carry no more than ten pounds (Tr. 24, 1402); (2) as discussed above, although Plaintiff's shoulder impairment predated her date last insured, Plaintiff stopped attending physical therapy and was discharged with an "unknown" status, even though she was making good progress; and (3) Plaintiff had shoulder surgery the month before Kosmetatos issued her opinion. (Tr. 3068.)

In light of the foregoing, the ALJ did not commit harmful error in discounting Kosmetatos's opinion.

### C.    Andes

Dr. Nguyen referred Plaintiff to Andes, who completed a physical capacity evaluation based on his examination of Plaintiff on November 19, 2018. (Tr. 1410-13.) In his physical

capacity evaluation, Andes noted that Plaintiff, who recently underwent arthroscopic shoulder surgery, used a sling and exhibited limited "shoulder range of motion"; Plaintiff exhibited full strength in her lower extremities; Plaintiff rated her pain as a three on a ten-point scale; and Plaintiff reported that her pain was "aggravated by any activity involving the use of her arms." (Tr. 1410-11.) Andes also opined that Plaintiff can lift and carry no more than ten pounds; engage in only "[m]inimal" overhead reaching "using [her] left arm predominantly"; stand stationary for twenty minutes at a time; and move/walk about for thirty minutes at a time. (Tr. 1411-12.) Andes added that he administered reliability tests, which were "graded as normal" and implied that Andes's results were a "good measure" of Plaintiff's "current physical abilities"; Plaintiff's "tolerance for work activities is limited by her chronic pain condition"; Plaintiff is "not considered to be capable of working on a consistent and reliable basis"; and psychological issues are "likely a significant contributing factor" in Plaintiff's "disability." (Tr. 1413.)

The ALJ mistakenly attributed Andes's physical capacity evaluation to Dr. Nguyen, the provider who referred Plaintiff to Andes. (Tr. 24, 1410.) Nevertheless, the ALJ provided germane reasons for discounting Andes's physical capacity evaluation, and thus any error in attribution was harmless. The ALJ assigned "little weight" to Andes's physical capacity evaluation because it was inconsistent with (1) Plaintiff's report that her pain was only a three on a ten-point scale; (2) the fact that Plaintiff exhibited full strength in her lower extremities on examination; (3) Plaintiff's activities; and (4) Plaintiff "having self-discontinued physical therapy." (Tr. 24.) Consistent with its findings above, the Court concludes that these are germane reasons for discounting Andes's opinion, and therefore the ALJ did not commit harmful error.

///

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision

because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 21st day of July, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge